UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JOSEPH EBU,                                                                    Petitioner,

v.                                                          Civil Action No. 3:25-cv-779-RGJ

JEFF TINDALL, Oldham County Jailer;
SAMUEL OLSON, Field Office Director for U.S.
Immigration and Customs Enforcement;
KRISTI NOEM, in her official capacity as Secretary,
U.S. Department of Homeland Security,                                        Respondents.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Joseph Ebu's Amended Writ of Habeas
Corpus. [DE 6]. Respondents responded on December 23, 2025. [DE 9]. Petitioner replied on
December 25, 2025. [DE 10]. The Parties agreed to forgo an evidentiary hearing. [DE 7; DE 8].
This matter is ripe for adjudication. For the reasons below, the Court will **GRANT** Joseph Ebu's
Petition for a Writ of Habeas Corpus.

**I.       Background**

Petitioner Joseph Ebu ("Ebu") is a lawful permanent resident ("LPR") of the United States.
[DE 6-1 at 33]. He entered the United States lawfully in 2013. [*Id.* at 35]. In 2017, Ebu pled guilty
to two misdemeanors. [*Id.*]. This led to Immigration and Customs Enforcement ("ICE") officials
detaining Ebu. [*Id.*]. The alleged basis for detainment was that Ebu was removable due to a
conviction of a "crime of moral turpitude committed within five years of admission." [*Id.*]. Ebu
was ordered removed by an immigration judge ("IJ") on January 2, 2018. [*Id.*]. After a series of
post-conviction relief efforts, including appellate review at both the Seventh Circuit and the Board
of Immigration Appeals, including the overturning of a final order of removal, Ebu was released
from immigration detention on March 16, 2021, pursuant to an Order of Release on Recognizance.
[*Id.;* DE 9 at 53]. Because of his successful post-conviction relief at the Seventh Circuit, he remains

a LPR. 8 C.F.R. § 1001.1(p) (LPR status "terminates upon *entry* of a *final* administrative order of exclusion, deportation, removal, or rescission.") (emphasis added). [DE 9 at 52]. Thus, although Ebu is not subject to a final order of removal, he is still in removal proceedings. [DE 6-1 at 36].[1]

Since 2021, Ebu has been running a small business which employs about seventeen United States citizens. [*Id.*]. Ebu is married to a United States citizen, and has a United States citizen child. [*Id.*]. Ebu also raises a stepson from his wife's earlier marriage. [*Id.*]. After his 2021 release, Ebu's wife filed a visa petition with the United States Customs and Immigrations Services ("USCIS"). USCIS requested that Ebu attend his wife's interview with immigration officials to discuss the merits of the visa. [*Id.*]. On December 8, 2025, Ebu voluntarily attended the interview. [*Id.*]. But upon arrival, Ebu was detained by ICE officials. [*Id.*]. Notably, the couple received an approval of their visa petition later that same day. [*Id.*]. Nonetheless, ICE officials informed Ebu that he was being detained solely due to his 2017 misdemeanors. [*Id.* at 37].

Ebu alleges that his 2021 release order has not been properly revoked which would allow for his redetention. [*Id.* at 40]. And because of that, Respondents have violated the Administrative Procedures Act by failing to follow their own regulations as obligated to do so pursuant to *United States ex. Rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Further, by improperly detaining Ebu, Respondents have violated Ebu's Fifth Amendment Due Process Rights.

ICE does not allege that Ebu violated his terms of his 2021 release. [*Id.*]. Instead, the United States argues that although the signature block cancelling the Release on Recognizance Order was left blank, it was nonetheless properly revoked pursuant to 8 C.F.R. § 236.1(c)(9). [DE 9 at 53]. Thus, his detention under 8 U.S.C. 1226(c)(1)(C) is proper. [*Id.*].

---

[1] Most recently, the United States Supreme Court denied Ebu's petition for writ of certiorari in a related matter concerning his application for citizenship. *Ebu v. U.S. Citizenship & Immigr. Servs.,* 134 F.4th 895 (6th Cir. 2025), *cert. denied*, --- S.Ct. ---, 2026 WL 79681 (Jan. 12, 2026).

Ebu seeks a Petition for Writ of Habeas Corpus to secure his release against Jeff Tindall, the Oldham County Jailer; Samuel Olson, the Field Officer Director for U.S. Immigration and Customs Enforcement; and Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security.

## II.    Jurisdiction

### A.    Standard

Neither party raises jurisdictional arguments. Still, district courts have jurisdiction only where Congress has provided. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Additionally, district courts within the Sixth Circuit do not have jurisdiction to decide claims that arise from an Executive Branch decision to "*execute* a removal order." *Rranxburgaj v. Wolf*, 825 F. App'x 278, 282-83 (6th Cir. 2020) (emphasis added).

"A district court may grant a writ of habeas corpus to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States." *Maldonado v. Olson*, 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025)(citing 28 U.S.C. § 2241(c)(3)).  Although the Court "may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

### B.    Analysis

In *DHS v. Regents of the Univ. of Cal.,* 591 U.S. 1, 19 (2020), the Supreme Court held that § 1252(b)(9) "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision ... to seek removal,' or 'the process by which ... removability will be determined.'" (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294-95 (2018)). And the Supreme Court has also rejected that Section 1252(g) is similarly narrow. That provision limits review of cases "arising from" decisions "to commence proceedings, adjudicate cases, or

execute removal orders." 8 U.S.C. § 1252(g). The Supreme Court rejected the suggestion that § 1252(g) covers "all claims arising from deportation proceedings" or imposes "a general jurisdictional limitation." *Reno v. American-Arab Anti–Discrimination Comm*., 525 U.S. 471, 482 (1999).

Ebu is challenging the detention itself, stating that "his continued detention is unlawful." [DE 6-1 at 39]. He is not challenging his removal proceedings, or his citizenship status as he is doing in other matters. And other district courts have found jurisdiction in similar challenges to the present. *See Maldonado*; *Karki v. Jones*, 2025 WL 1638070, *8 (S.D. Ohio June 9, 2025); *Zhu v. Genalo,* 798 F. Supp.3d 400, 406-07  (S.D.N.Y. 2025); *Orellana v. Baker*, 2025 WL 2444087, *3 (D. Md. Aug. 25, 2025) (holding that because "Orellana does not ask this Court to enter an order staying ICE's execution of his removal order" but instead "Orellana challenges the legality of his detention pending the effectuation of his removal order. This Court has jurisdiction to evaluate this challenge.") As a result, the Court will reach the merits of Ebu's petition.

### III.    Discussion

Ebu contends that he was wrongfully detained in violation of the INA pursuant to *Accardi* and that his Fifth Amendment rights have been violated. [DE 6-1 at 40-41]. In *Accardi*, the Supreme Court held that when the United States promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations." 347 U.S. at  268. This also applies to agencies own internal manuals. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974). To prove an *Accardi* claim, and a violation of Due Process, the claimant must also "demonstrate prejudice resulting from the violation." *Am. Farm Liens v. Black Ball Freight Serv.*, 397 U.S. 532, 538-39 (1970). But prejudice may be presumed when "compliance with the regulation is mandated by the Constitution" and "where an entire procedural framework, designed to insure the fair

4

processing of an action affecting an individual is created but then not followed by an agency."

*Delgado-Corea v. Immigr. & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986).

In his original petition, Ebu contended that his release was under an Order of Supervision and thus governed by 8 C.F.R. § 241.4(*l*)(2). [DE 1]. However, after further discussions between Ebu and the United States, both Parties now agree that Ebu was released under a Form I-220A Order of Release and the revocation of Ebu's Release Order is governed by 8 C.F.R. 236.1(c)(9) [DE 6; DE 9]. 8 C.F.R. § 236.1(c)(9) reads in full:

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 C.F.R. § 236.1(c)(9). Ebu provided a copy to the Court of his Form I-220A Release Order. [DE 6-2 at 44]. On the Form I-220A, there are three lines for signatures. Two lines are to be signed when the form is provided upon initial release of the noncitizen, and the third is to "cancel this order of release." [*Id.*]. The provided copy demonstrates that the section "Signature of ICE official Serving Order" is signed and dated, next to Ebu's signature. [*Id.*].  But the section that states, "I hereby cancel this order" is unsigned, undated, and not marked. Notably, the United States concedes this fact. "[N]either of the two boxes notifying Petitioner that his release was canceled were checked." [DE 9 at 54]. Still, the United States contends that the blank revocation was proper due to the arrest warrant served by a proper delegated authority, and that under 8 C.F.R. § 236.1(c)(9), proper revocation does not require a change in circumstances of the noncitizen.

When interpreting statues, "the inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (internal quotes omitted). "Every clause and word . . . should have meaning." *United States, ex rel.*

*Polansky v. Exec. Health Res., Inc.,* 599 U.S. 419, 432 (2023) (internal quotation marks and citation omitted). The regulation states that "such release may be revoked at any time in the discretion of [various ICE officials], *in which event* the alien may be taken into physical custody and detained." 8 C.F.R. § 236.1(c)(9) (emphasis added). The use of the phrase "in which event" implies that Ebu can only be detained *after* his Form I-220A was revoked. *In the event,* THESAURAS.COM, https://www.thesaurus.com/browse/in-the-event (last visited Jan. 26, 2026) (synonyms for "in which event" include "on condition," "if and only if"). Thus, following the plain text of the regulation, Ebu can only be detained after his Form I-220A was properly revoked. And on concession by the United States, Ebu's form was never signed. Which means the first condition was never satisfied, and therefore Ebu cannot be re-detained. Thus, the United States has failed to follow their own regulations in a violation of *Accardi. Montilla v. INS*, 926 F.2d 162, 166-67 (2d Cir. 1991) (stating that the *Accardi* doctrine is a "long-settled principle that rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency" and "is premised on fundamental notions of fair play underlying the concept of due process").

For completeness, the Court will still address the United States's arguments. The United States contends that the arrest warrant served upon Ebu served as a valid method of revocation under 8 C.F.R. § 236.1(c)(9) [DE 9 at 54 (revocation was proper because "an [Supervisory Detention and Deportation Officer ("SDDO")] signed the arrest warrant that was presented to petitioner")]. In other words, the United States contends that the arrest warrant was served by the proper authority figure, the SDDO, and because of that, it was a proper revocation. The United States points to a July 2019 delegation order that delegated authority to Supervisory Detention and Deportation officers to make certain detention decisions under 8 C.F.R. § 236.1(c)(9). [DE 9 at 54]. But the delegation order does not include the delegation of the authority for the revocation of release. The subject line of the delegation order states plainly that it is delegating "*certain* detention

and removal authority" to the officers listed. [DE 9-1 at 56] (emphasis added). The July 2019 order notably omits any mention of revocation. Therefore, following a plain reading, the text appears "unambiguous" that the delegation does *not* extend to revocation authority. Other courts who have been presented with the identical delegation order are all in agreement. *See Ceesay v. Kursdorfer*, 781 F. Supp.3d 137, 161 (W.D.N.Y. 2025) ("[o]n its face, the delegation order submitted by the government refers only to a limited set of powers … that do not include the power to revoke release"); *see also*, *M.S.L. v. Bostock*, 2025 WL 2430267, *10 (D. Or. Aug. 21, 2025). Therefore, even assuming that the revocation via an arrest warrant was proper (it is not), because the regulation "limits the ability to make a revocation decision to particular individuals" and "there is no evidence that [Ebu's] release was revoked by anyone with authority to do so" the revocation is in violation of the APA. *S-M-J v. Bostock*, 2025 WL 3137296, at *4 (D. Or. Nov. 10, 2025).

In the alternative, even if the delegation was proper, the arrest warrant cannot serve as a proper revocation as the United States contends. [DE 9 at 53-54]. As discussed above, this would flip the statute on its head. And to avoid 'denying effect to a part of a statute,' we accord 'significance and effect to every word.'" *United States v. Giraud*, 795 F. Supp.3d 560, 581 (D.N.J. 2025) (quoting *Rake v. Wade*, 508 U.S. 464, 471-72 (1993)). By the use of the phrase "in which event" the regulation follows an "if and then" structure. *In the event,* THESAURAS.COM, https://www.thesaurus.com/browse/in-the-event (last visited Jan. 26, 2026) (synonyms for "in which event" include "on condition," "if and only if"). The end result cannot be used to justify the lack of earlier event.

Lastly, the United States claims that the "regulation does not require a change in circumstances." [DE 9 at 53]. To be sure, the plain text does not state so. But "the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000). The United States has

recognized the "change in circumstances" limitation in other identical cases. *See Y.M.M. v. Wamsley*, 2025 WL 3101782, at *2 ("Respondents acknowledge in their return petition, it has long been recognized by the Board of Immigration Appeals that the discretion to revoke release is limited to situations in which there has been a change of circumstance' since the non-citizen was initially released.") (internal quotations omitted). Without this limitation, the United States could reasonably encounter potential Fifth Amendment violations. This is because "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Fifth Amendment's Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). And further, regulations should be construed, when possible, to avoid any "serious doubt" of their constitutionality." *Crowell v. Benson*, 285 U.S. 22, 62 (1932). Further supporting this theory is the Form I-220A, as it implicitly puts limits on the reasons for revocation. Directly above the line which reads "Cancelling Order" is a checkbox for "[t]he alien field to comply with conditions of release" or "[t]he alien was taken into custody for removal." [DE 63 at 44]. Thus, the language of 8 C.F.R. 236.1(c)(9) does not permit such broad latitude for the revocation of release as the United States contends.

The Court acknowledges that the United States has broad discretion to enforce immigration laws and, possibly, to revoke Ebu's Order of Release. But it must follow the law and give every word in the applicable statutes and regulations their full meaning. This includes both the "requirements of its own regulations and the Due Process Clause." *Zhu*, 798 F. Supp.3d at 415. In this instance, ICE and the United States failed to do so, and thus violated their own regulations and the due process clause.

## IV.    Remedy

As a remedy, courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025)

(ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152-53 (D. Mass. 2025) (holding that because ICE violated "its own regulations. . . [petitioner's] detention is unlawful and that his release is appropriate"); *Rombot v. Souza*, 296 F.Supp. 3d 383, 389 (D. Mass. 2025) (finding that because ICE's detention failed to follow due process, the court ordered release "pursuant to the conditions in [petitioner's] preexisting Order of Supervision.") The Supreme Court has also recognized that "Habeas has traditionally been a means to secure *release* from unlawful detention." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in original). As a result, Petitioner must be released.

## V.    Conclusion

For the reasons stated above, ICE's failure to follow their own regulations violate the *Accardi* doctrine and Ebu's procedural due process rights. The Court **GRANTS** Ebu's Amended Petition for Writ of Habeas Corpus [DE 6] and **ORDERS** his immediate release. The United States is directed to release Petitioner Ebu from custody; and further, to certify compliance with the Court's order by a filing on the docket no later than **February 2, 2026.**